PRICE'S EXECUTRIX *vs.* PRICE'S EXECUTORS.

Where an executor who has had the actual management of the estate, has wasted or misappropriated the funds in his hands, and claims that he can permit a co-executor, now insolvent, to take funds of the estate, without being responsible, and has once permitted this, and such co-executor appropriated the funds so taken to his own use, a receiver will be appointed.

This was an application on part of the complainant, one of the executors of Francis Price, deceased, in a suit brought by her against the defendants, Rodman M. Price, Edward L. Price, and Zachariah Price, her co-executors, for an account. The application was founded upon the testimony taken in the cause for the final hearing.

*Mr. Garretson,* for application.

*Mr. A. B. Woodruff,* contra.

THE CHANCELLOR.

The testator, Francis Price, by his will, gave to the defendant R. M. Price, in trust for his children, one-half of all his estate, deducting $16,000 in pecuniary legacies, which he directed to be paid out of the half given to Rodman in trust. The other half he directed to be divided equally amongst his widow, and his son Edward, and his daughter Frances; Edward and Frances to have the principal of the one-third left to their mother, upon her death. The shares of the complainant and Frances were to be paid to trustees, and the share of Frances, at her death, was limited over to her children, infant defendants.

The complainant, and the defendants, Rodman M., Edward, and Zachariah, were appointed executors. The complainant, only, proved the will in the city of New York, where the testator resided at his death. All the executors proved the will in this state, and had letters testamentary issued by the surrogate of the county of Bergen. The defendant Zachariah Price has done nothing in the administration of the estate, except receiving $1000 for his services in being executor. The defendant Edward L. Price has done nothing in administering the estate, except taking $19,000 in bonds, as executor, nominally for payment of debts, but which he appropriated. He afterwards was declared a bankrupt.

The defendant Rodman M. Price has received and managed almost all the estate, the greater part of which was in New Jersey. It consisted in part of a mortgage for $200,000, another for $15,000, a third for $900; some lots at Elizabeth, sold for $13,000; and a farm at Ramapo, the title of which was in the name of the testator, but which is claimed by Rodman M. Price to be in him, as trustee for his children.

Rodman M. Price has answered, and rendered an account.

By this it appears, as admitted by the bill, that the mortgage for $200,000 was disputed by the Weehawken Ferry Company, the owners of the mortgaged premises; that a compromise was made by the executors with the company, by which one hundred and seventy-five bonds of the company, for $1000 each, were received in satisfaction of the mortgage. These were received by R. M. Price. By the account annexed to his answer, it appears that he received from other sources, in cash, $28,950, and paid out $26,608.16, leaving in his hands a cash balance of $2341.84. This account further shows, that with the bonds he paid $6000 to counsel, for services either to the testator or the executors; that he paid the $16,000 legacies charged upon the half of the estate given to him in trust; that he paid the trustee of the complainant and her daughter Frances, $40,000; that he paid Edward L. Price, on his share, $20,000, and gave him as executor, $19,-000; and gave to Zachariah $1000 for his services; and that the residue of these bonds, or $73,000, are in his hands or unaccounted for.

In his examination as a witness in the cause he claims to hold these as trustee for his children, or rather that he did hold them as such, none of them being now held by him. He refuses to answer as to what he has done with them, on the ground that being held by him as trustee for his children, he is not bound to account for them in this suit, or to answer any question concerning them.

The $6000 of these bonds paid to counsel must, on this application, be taken to be rightly appropriated; so, also, the $1000 paid to his co-executor. This leaves $168,000 to be accounted for. Of this, E. L. Price has taken and wasted $19,000, leaving (if R. M. Price is not charged with this sum) $149,000 to be equally divided between R. M. Price, trustee, and the donees of the other half of the estate. If from one-half of this is deducted the legacies amounting to $16,000, directed by the will to be paid out of his half, it leaves only $58,500 belonging to him as trustee for his children. The other $14,500 of the $73,000 not accounted for,

belong to those to whom the other half of the estate was given. This he holds, besides the $2311 balance of cash. I do not intend to express an opinion that he is not accountable for the $19,000, which, in one part of his testimony, he says he paid over to Edward, and in another part says that Edward took from a common depository, without his consent, although in his presence.

It appears from his own testimony that he has wasted or misappropriated the amount in his hands, and he refuses to answer how or where. If, as he claims, he can permit a co-executor, now insolvent, to take funds of the estate, without being responsible, and has once permitted this, it is sufficient cause to take from him the power of doing so again. If he is responsible, it adds so much to the amount of his deficiency.

This appears to me clearly to be such a case as requires that the further management of this estate should be taken out of the hands of these defendant executors by the appointment of a receiver, to whom all the assets of the estate shall be delivered, and to whom alone all debts due to the estate shall be paid. This only to extend to property or assets in this state, and debts due from residents here, or secured upon property in this state.

The complainant, as sole executrix in the state of the testator's domicil, to whom the administration in this state is only ancillary, will be entitled to receive all assets not administered here, to be accounted for and administered under the direction of the courts of the domicil of the decedent.